Gary R. SHEPHERD, Appellant–Respondent,

v.

Linda S. (Shepherd) TACKETT, Appellee–Petitioner.

No. 72A01–1012–DR–692.

Court of Appeals of Indiana.

Sept. 13, 2011.

R. Patrick Magrath, Alcorn Goering & Sage, LLP, Madison, IN, Attorney for Appellant.

Joseph A. Colussi, Colussi Law Office, Madison, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Gary R. Shepherd ("Gary") appeals the trial court's post-dissolution order and

raises two issues that we consolidate and restate as: whether the trial court's order impermissibly modified the parties' property division as stated in the Decree of Dissolution ("Decree").

We affirm.

## FACTS AND PROCEDURAL HISTORY

On August 14, 2009, Linda (Shepherd) Tackett ("Linda") filed for dissolution of her marriage to Gary. A contested final hearing was held in December 2009, and on February 10, 2010, the trial court issued the Decree, which incorporated a division of property. In it, the trial court awarded the marital real estate to Linda. During the marriage, the parties had obtained a second mortgage on the property in the amount of $50,000; at the time of dissolution, the balance of the second mortgage was $43,304. *Appellant's App.* at 5. The trial court's property division divided that indebtedness equally between Gary and Linda. Specifically, Paragraph 21(e) of the Decree provided:

> Each party shall be responsible for one-half (1/2) of the second mortgage indebtedness and [Gary] shall pay to [Linda] $252.47 each and every month no later than seven (7) days before the mortgage payment due date. An assignment or qualified domestic relations order shall be entered for the payment of this amount.

*Id.* at 6.

On February 18, 2010, eight days after the final dissolution Decree, Gary filed a Chapter 13 bankruptcy petition with the Federal Bankruptcy Court, in the U.S. District Court, Southern District of Indiana, New Albany Division. The bankruptcy filing stayed all action in the trial court, including that concerning Gary's second mortgage obligation. *See* 11 U.S.C. § 362(b)(2)(A)(iv) (stay applies to nonsupport spousal obligations and trial court may not enforce while Chapter 13 is pending). Linda petitioned the bankruptcy court for limited relief from the automatic stay in order to obtain clarification from the trial court on issues surrounding Gary's obligation on the second mortgage. In her petition, she notified the bankruptcy court that Paragraph 21(e) did not identify the specific balance that Gary owed on the second mortgage, the interest rate on his obligation, the duration of payments, and it did not identify what to do in the event that Gary's pension plan did not accept an assignment or qualified domestic relations order ("QDRO"). Gary objected to her request for relief from the stay, but the bankruptcy court overruled his objection and determined that the trial court's order was not sufficiently clear regarding the second mortgage. The bankruptcy court's order stated:

> 6. Though a monthly installment is clearly contemplated, it is unclear to the creditor, the debtor, and this Court whether the ex-husband has the option of paying the unpaid balance in full—now or at some point in the future.
> 7. Though an "assignment of Qualified Domestic Relations Order" to pay the payments of $252.47 per month out of the ex-husband's pension plan or retirement fund is clearly contemplated, it is unclear to the creditor, the debtor, and this Court what happens in the event that the Plan Administrator *rejects* such an assignment or Qualified Domestic Relations Order . . .
> 8. Finally, it is unclear to the creditor, the debtor, and this Court whether the ex-wife, LINDA TACKETT, has a *security interest* in the debtor's pension plan or retirement fund until the ex-husband pays what he owes.

*Id.* at 11 (emphasis in original). The bankruptcy court ordered Linda to petition the

trial court for clarification of Paragraph 21(e). *Id.*

On July 16, 2010, Linda filed a verified Petition to Clarify Divorce Decree with the trial court. Her petition alleged, among other things, that Paragraph 21(e) did not recite the balance owed, the interest rate, and did not identify who bears the liability for late charges/penalties if payments are not made on time or in full. She also averred that the plan administrator for Gary's retirement account "lacks the authority" to make the $252.47 monthly payments to Gary "as contemplated by the Decree." *Id.* at 13.

On October 22, 2010, the trial court held a hearing, where it received argument from counsel, but no new evidence was presented. At the hearing, Linda's counsel explained that, in contrast to a Chapter 7 bankruptcy that provides that things such as child support and money obligations from one spouse to another are not dischargeable, Gary filed a Chapter 13 bankruptcy, which allows that secured debts are paid in full but unsecured debts are paid only in a specified portion determined by the bankruptcy code according to the debtor's disposable income after living expenses. In line with Linda's verified petition, Linda's counsel stated that the Decree was not clear in a number of respects, including whether Gary owed a sum certain on the second mortgage, what the interest rate was, what would happen if he did not pay, the duration of his payments, and whether the debt was secured or unsecured. He further stated that the plan administrator of Gary's pension plan rejected the proposed QDRO that required payments to Linda in the amount of $252.47 per month; the plan would distribute a one-time payment of a specified percentage of Gary's retirement to Linda, but would not issue monthly payments. Linda's counsel asked the trial

court to clarify what kind of debt Gary owed to Linda so that the bankruptcy court "can determine how much Mr. Shepherd has to pay to Mrs. Shepherd out of his Chapter 13 Bankruptcy." *Tr.* at 11.

In response, counsel for Gary flatly disagreed with Linda's requested relief as being a clarification, maintaining she was actually seeking to modify the Decree, without any showing of fraud as required by Indiana Code section 31–15–7–9.1. He reiterated that the Decree did not award Linda a portion of the retirement account; rather, it awarded her a payment over a period of time, "and that is the type of thing that is subject to the Chapter 13." *Id.* at 16.

At the conclusion of the hearing, the trial court noted that neither of the attorneys arguing at the hearing on Linda's petition for clarification were at the final dissolution hearing, explaining to them that "the possibility of Mr. Shepherd filing bankruptcy was clearly anticipated at the hearing," and, in fact, Linda's attorney at trial had remarked that "we need a [qualified domestic relations order] to prevent him from discharging in bankruptcy." *Id.* The trial court further explained that in issuing the Decree, which made Gary responsible for one-half of the second mortgage, "the intent was [for] the debt to be secured against the pension assets of Mr. Shepherd or secured by the pension assets of Mr. Shepherd." *Id.* at 19.

Thereafter, on November 23, 2010, the trial court issued the written order ("Order"), at issue now, which stated in relevant part:

B. The parties were each ordered to pay one-half of the second mortgage in the approximate amount of $43,304.

C. The Decree was unclear but the Court intended that [Linda] have a judgment against [Gary] for $21,-

652—half the balance of the 2nd mortgage—with that judgment accruing interest at the same rate as the mortgage.

. . . .

E. The Decree was unclear but the Court intended for [Linda] to pay the $504.94 per month installment payments on the second mortgage, and for [Gary] to pay [Linda] $252.47 per month—half of the monthly mortgage payment—with each payment being credited against the judgement [sic] against [Gary] until the judgement was reduced to zero.

F. Nothing on [sic] the decree was intended to limit [Linda's] option to pay the mortgage early, or to limit [Gary's] option to pay off the judgement early; merely to set a minimum amount that [Gary] had to pay to [Linda] if he chose to pay the judgement [sic] month to month.

G. The Decree was unclear but *the language in 21(e) regarding an "assignment" was intended to give [Linda] a lien against the present value of* [Gary's] defined benefit plan . . . as security.

*Appellant's App.* at 16–17 (emphasis added). The trial court further stated, "[T]his Order is entered solely for the purpose of clarifying the court's Decree . . . and for no other purpose." *Id.* Gary now appeals.

**DISCUSSION AND DECISION**

 Gary argues that the trial court's Order did not clarify the Decree, but rather modified it, contrary to the requirements of Indiana Code section 31–15–7–9.1, which provides that orders concerning a property division may not be revoked or modified, except in the case of fraud. *See* I.C. § 31–15–7–9.1. As a general matter, strong policy favors the finality of marital property divisions, whether the court approves the terms of a settlement agreement reached by the parties or the court mandates the division of the property among the parties. *Beike v. Beike,* 805 N.E.2d 1265, 1267 (Ind.Ct.App.2004) (citing *Dusenberry v. Dusenberry,* 625 N.E.2d 458, 461 (Ind.Ct.App.1993)). However, a dissolution court may exercise continuing jurisdiction to reexamine a property settlement " 'where the nature of which is to seek clarification of a prior order.' " *Fackler v. Powell,* 839 N.E.2d 165, 167 (Ind. 2005) (quoting *Thomas v. Thomas,* 577 N.E.2d 216, 219 (Ind.1991)). A dissolution court retains jurisdiction to interpret the terms of its decree and decide questions emanating from its decree pertaining to its enforcement. *Fackler,* 839 N.E.2d at 169. Clarifying a settlement agreement, consistent with the parties' intent, is not the same as modifying the agreement. *Beaman v. Beaman,* 844 N.E.2d 525, 531 (Ind. Ct.App.2006).

The issue presented in this appeal is whether the trial court's Order modified the Decree or clarified it. Gary claims that despite the fact that Linda did not prove, or even allege, the existence of fraud, the trial court nevertheless modified the property division provisions in the Decree, namely those concerning the second mortgage. Linda, on the other hand, contends that the terms of the Decree were ambiguous, on a number of levels, as to Paragraph 21(e), and therefore, the trial court's November order was a clarification of an ambiguous order, not a modification. We agree with Linda.

 The general rules applicable to construction of contracts govern construction of settlement agreements. *Niccum v. Niccum,* 734 N.E.2d 637, 639 (Ind.Ct.App. 2000). "The interpretation and construction of contract provisions is a function for the courts." *Id.* Our standard of review is

essentially the same as that employed by the trial court. Unless the terms of a contract are ambiguous, they will be given their plain and ordinary meaning. *Id.*

Here, the Decree initially did not provide complete or thorough direction regarding Gary's obligations concerning the second mortgage. In fact, the bankruptcy court partially lifted its stay and sought direction from the trial court about the character and amount of Gary's obligation on the second mortgage. While the Decree's original property division clearly required Gary to pay and be responsible for one-half of the second mortgage and directed that a QDRO or assignment be made to accomplish the payments to Linda on the indebtedness, the Decree left a number of uncertainties, including the balance on the second mortgage, the precise nature of her interest, the duration of payments from Gary to Linda, and what happens if Gary did not pay his installment or if the QDRO (for monthly payments from his pension) is not permitted. Gary maintains that under the terms of the original Decree, Linda did not have "any property interest or security interest in Gary's pension," and the Decree was "unambiguous" in that regard. *Appellant's Reply* Br. at 6. We disagree. To hold otherwise would render Paragraph 21(e)'s terms of "assignment" and "qualified domestic relations order" without meaning or effect. We conclude that Paragraph 21(e) of the Decree was uncertain and ambiguous, especially considering that the bankruptcy court issued a limited relief from stay because it did not know how to schedule the second mortgage obligation when creating a repayment plan and ordered Linda to seek clarification from the trial court.

Gary directs us to various cases in support of his position and, in particular, describes *Strohmier v. Strohmier,* 839 N.E.2d 234 (Ind.Ct.App.2005) as "the only case cited by either party ... that actually discusses the distinction between 'clarification' and 'modification' in the context of a post dissolution bankruptcy[.]" *Reply* Br. at 1. While worthy of recognition and discussion, we find it distinguishable from the present facts.

In *Strohmier,* the parties' marriage was dissolved on January 31, 1991. There were no marital debts and the only asset was the marital residence, which was awarded to Glen Strohmier ("Husband") as his sole property. The court awarded to Vivian Strohmier ("Wife") a judgment against Husband in the amount of $30,000. As of June 1991, the judgment remained unpaid, and Wife petitioned to amend the decree to place a judicial lien on Husband's residence; the trial court initially granted her request, but it was vacated after Husband filed a motion to correct error. Meanwhile, unbeknownst to Wife or the trial court, Husband filed for Chapter 7 bankruptcy. After various legal proceedings, Husband received a bankruptcy discharge in 1992 of Wife's $30,000 judgment lien.

Husband requested appointment of a commissioner to transfer Wife's interest in the real property to him. Wife filed various motions, including a motion for relief from judgment, seeking to have the property remain held as tenants in common and a motion to modify, seeking, among other things, to have the real estate be awarded to the parties as tenants in common (rather than to Husband solely). These issues continued to pend, and in 2004, more than thirteen years after the decree of dissolution, Wife sought a hearing on all pending motions. The trial court granted her request and following a hearing, it granted her petition to modify and ordered the real estate awarded to Husband and Wife as tenants in common. Husband appealed. Finding that the trial

court's actions were an impermissible modification, we reversed.

Now, Gary urges us to follow suit and argues that *Strohmier* is "nearly exactly on point." *Appellant's* Br. at 9. While the case is certainly relevant, we find it distinguishable from that before us now. In *Strohmier*, the challenged trial court order was issued in 2005, more than a decade after the 1991 decree of dissolution. Wife's 1993 petition to modify did not seek clarification of something uncertain, but rather desired a change of real property ownership after the bankruptcy court, in 1992, had discharged her $30,000 judgment lien against Husband. In granting her petition to modify, the trial court awarded real estate to Husband and Wife as tenants in common, when the 1991 decree had awarded it to Husband as his sole property, thus making a clear change in the decree's property division.

In contrast, the trial court in the present case did not modify the property division, but rather provided alternate means of securing Gary's existing obligation after learning that the original QDRO would not be enforced. At the hearing on Linda's petition to clarify, the trial court stated:

> [T]he court's intent was to secure that debt [on the second mortgage] through an assignment of the interest in his retirement funds. If I recall right I think there may have been some testimony that, that it could not be divided or that the pension administrator would not grant a request for the full amount, so my intent was to secure that fund, that amount in the best way that I thought I could do at the time of the final hearing and that's assigning the periodic amount until that amount was paid in full.... But the intent was that debt to be secured against the pension assets of Mr. Shepherd or secured by the pension assets of Mr. Shepherd.

*Tr.* at 17–19. The trial court's Order restated that Gary was obligated to pay one-half of the second mortgage and it clarified that the term "assignment" was intended to give Linda security in the monthly pension benefit. *Appellant's App.* at 17.

Although a court may not modify a final decree, it may construe and clarify it in the case of uncertainty, in order to sustain the decree, rather than defeat it; however, an order is not merely a clarification where it makes substantial changes in the original decree. 24 Am.Jur.2d *Divorce and Separation* § 562 Modification and Clarification of Decree (updated Aug. 2011). Here, the Order did not make sweeping or substantial changes to the Decree. It did not award more property to Linda or less to Gary. It did not change the division of property. It did not schedule a new obligation or indebtedness. Rather, the Order was a clarification of an existing obligation, namely the debt for half the second mortgage, which Gary owed under the original Decree. We find no trial court error.

Affirmed.

VAIDIK, J., and MATHIAS, J., concur.