**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Dec 31 2013, 8:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**NICHOLAS BLESCH CLARK**
Swenson & Clark LLP
Carmel, Indiana

ATTORNEY FOR APPELLEE:

**LARRY F. WHITHAM**
Whitham, Hebenstreit & Zubek, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES R. BELCHER, SR., | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No.  32A01-1305-DR-225 |
| | ) | |
| SANDRA G. BELCHER, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1108-DR-581

**December 31, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

For almost two years, the parties in the instant case have been wrangling over property distribution following the dissolution of their marriage. More specifically, they have been quarreling over a 2006 Harley Davidson Softtail motorcycle.

Appellant-petitioner James R. Belcher Sr. appeals the trial court's order, following his petition for contempt against appellee-respondent Sandra G. Belcher. After Sandra admitted that she could not deliver the motorcycle that James had been awarded in the property distribution decree because she had signed the title over to her son, the trial court removed it from the marital estate, added an account receivable, and effected a fifty-fifty distribution, which had been its original intent.

On appeal, James argues that Sandra should be held in contempt, the trial court impermissibly modified the original property distribution, and requests appellate attorney fees. Concluding that the trial court did not err by not finding Sandra in contempt, that the trial court only clarified its original order, and declining to remand for the determination of attorney fees, we affirm the judgment of the trial court.

FACTS

James and Sandra were married on September 16, 2006. After multiple separations and at least one prior filing for dissolution, James filed for dissolution on August 12, 2011.

The final hearing on the dissolution was held on March 26, 2012. At the final hearing, Sandra listed a 2006 Harley Davidson Softtail motorcycle valued at $11,188 as a marital asset. A handwritten note stating that Sandra's son, David Whitlock, was paying

2

James for the motorcycle and that the motorcycle had been traded for a Camaro, was submitted with the price report. James, however, testified that the motorcycle had been in Sandra's name and that she had signed the motorcycle over to David. Therefore, James no longer had any claim to the motorcycle and was not receiving payments for it.

On March 29, 2012, the trial court issued its order dividing marital assets and debts. In its order, the trial court concluded that neither party had rebutted the presumption of an equal division of the marital estate. The trial court then devised a nearly equal division of the parties' assets and debts, which it incorporated into its order. James was awarded the motorcycle valued at $11,188.

James filed a motion to correct error on April 24, 2012, arguing that Sandra had signed over the motorcycle to her son, David, while the couple was still married. Consequently, James had no claim to any money or trade that David might offer towards payment for the motorcycle, insofar as the motorcycle had been in Sandra's name. Appellant's App. p. 19. Indeed, James included a notarized signed statement from David, stating that Sandra had signed the motorcycle over to him on March 1, 2011, one year before the divorce was final. Thus, James argued that the motorcycle should not be part of the marital estate subject to division.

Sandra responded on May 12, 2012. Sandra did not dispute that the motorcycle and other disputed items were in the possession of third parties but maintained that these items were still owned by either Sandra and/or James at the time of legal separation and, therefore, were correctly included in the marital estate. Sandra pointed out that these

items were in the process of being sold and were awarded as accounts receivable. The trial court denied James's motion to correct error on May 9, 2012.

James filed an appeal, which he chose not to pursue. Then, on January 4, 2013, Sandra filed a petition for emergency hearing to facilitate compliance with the court's previous order. In the petition, Sandra noted that the parties were still holding the assets, which had been awarded to the other party. The petition incorporated various communications between counsel, including an email from James's counsel attempting to confirm whether the motorcycle was in Sandra's possession.

On March 11, 2013, James filed a verified petition for rule to show cause and contempt citation. The petition alleged, among other things, that Sandra had failed to return the motorcycle to James as ordered by the trial court. James requested that the trial court order Sandra to return the motorcycle, find her in contempt, and order her to pay attorney fees and litigation expenses.

On March 14, 2013, Sandra responded and filed a counter petition, essentially arguing that James's petition was frivolous because he knew that the motorcycle had been disposed of during the marriage and that it was impossible for Sandra to provide the motorcycle. Sandra also pointed out that James had voluntarily dismissed his appeal from the original property disposition while knowing these facts. Sandra requested that James be held in contempt for other issues and that the trial court order James to pay all of Sandra's costs, attorney fees, and travel expenses.

4

At the March 15, 2013 contempt hearing, James testified on direct examination that he had not received the motorcycle or the equivalent value. On cross-examination, James pointed out that the trial court had awarded him the motorcycle despite the testimony at the March 26, 2012 final hearing that the motorcycle had been signed over to David. James further argued that if the motorcycle was not something that Sandra could provide, she should be ordered to provide the monetary value because she had several opportunities to argue that it did not belong in the marital estate. Moreover, James contended that after nearly one year, the original property division could not be reopened.

By contrast, Sandra pointed out that James had already made several arguments about the disposition of the motorcycle and that it was James's responsibility to have addressed the matter. Sandra further argued that James had conceded that Sandra could not provide the motorcycle. On rebuttal, James pointed out that although he had always argued that the motorcycle should not be part of the marital estate, it would throw off the balance of the property distribution unless he was awarded the motorcycle or its monetary value.

At the conclusion of the hearing, the trial court noted that it was frustrated by the issue of the motorcycle and that it found it "doubly frustrating because the response to the motion to correct error again re-iterated" that the motorcycle was still owned by each of the respective parties. Tr. p. 161-62.

5

In the trial court's March 18, 2013 order, the trial court acknowledged that Sandra had asserted that the motorcycle was part of the marital estate in earlier proceedings but that she had since conceded that it was not a marital asset subject to division. The trial court then removed the motorcycle from the marital estate and adjusted the disposition of the other assets to bring the division of the marital assets back to a fifty-fifty division, which had been the original intent of the trial court.

On April 8, 2013, James filed a motion to correct error alleging that the trial court's judgment was contrary to law because it modified the original property distribution even though Indiana statutory and case law prohibits such modification. James also argued that Sandra was in the position that she was in solely because of her own repeated false statements to the trial court and that it would be unfair to allow her to benefit from such misconduct. James requested that the trial court find Sandra in contempt and order her to provide to James either the motorcycle or its value to him.

Sandra responded on April 23, 2013, arguing that James had filed repeated motions requesting reversal of the trial court's disposition of the motorcycle. Sandra requested that the trial court strike the motion under Indiana Trial Rule 12(f), for being a redundant pleading or deny the motion and order James to pay legal fees and costs. Sandra also argued that James had received payments towards the accounts receivable.

On April 23, 2013, the trial court denied James's motion to correct error without further comment or explanation. James now appeals.

DISCUSSION AND DECISION

I. Contempt

The determination of whether a party is in contempt of court is a matter left to the sound discretion of the trial court. Topoiski v. Topoiski, 742 N.E.2d 991, 994 (Ind. Ct. App. 2001). An abuse of discretion occurs when a trial court's finding of contempt is against the logic and effect of the evidence before it or it is contrary to law. Id. For a party to be held in contempt of court, the conduct of the party failing to comply with a court order must be willful. Williamson v. Creamer, 722 N.E.2d 863, 865 (Ind. Ct. App. 2000).

Here, the trial court found neither party in contempt of its previous orders. Appellant's App. p. 66-68. At the March 15, 2013 contempt hearing, James testified that he sold the motorcycle to Sandra's son, David, and that he received money up and until she signed it over to David. Tr. p. 103. James also testified that the motorcycle did not belong to him or to Sandra at the time the dissolution was final. Id. at 104. With respect to the motorcycle, the trial court concluded that Sandra "conceded that the 2006 Harley Davidson soft tail motorcycle was not a marital asset subject to division." Appellant's App. p. 67-68. Thus, the trial court essentially concluded that Sandra could not be in contempt for not delivering to James an asset that she did not possess. In light of these

7

facts and circumstances, we cannot say the trial court erred by not finding Sandra in contempt.

## II. Property Division

James argues that the trial court was without authority to reduce the marital estate by removing the motorcycle and then equalizing the marital estate by dividing an account receivable. In short, James argues that this was an impermissible modification of the property division decree.

Indiana Code section 31-15-7-9.1 provides that property disposition orders "may not be revoked or modified, except in the case of fraud." We have repeatedly stated that strong policy favors the finality of marital property divisions. Shepherd v. Tackett, 954 N.E.2d 477, 480 (Ind. Ct. App. 2011); Beike v. Beike, 805 N.E.2d 1265, 1267 (Ind. Ct. App. 2004); Dusenberry v. Dusenberry, 625 N.E.2d 458, 461 (Ind. Ct. App. 1993). Notwithstanding this general policy, a court "may exercise continuing jurisdiction to reexamine a property settlement 'where the nature of which is to seek clarification of a prior order.'" Shepherd, 954 N.E.2d at 480 (quoting Fackler v. Powell, 839 N.E.2d 165, 167 (Ind. 2005)). "A dissolution court retains jurisdiction to interpret the terms of its decree and decide questions emanating from its decree pertaining to its enforcement." Id.

We find Shepherd instructive in the instant case. In Shepherd, the property division decree ordered the husband and wife to be responsible for one-half of the remaining debt on a second mortgage. Id. at 478. Eight days after the final dissolution

8

decree, the husband filed a Chapter 13 bankruptcy petition, which stayed his obligation on the second mortgage. Id.

The wife petitioned the bankruptcy court for limited relief from the automatic stay to seek clarification from the trial court regarding the husband's obligation on the husband's second mortgage, including what to do in the event that the husband's pension plan did not accept the qualified domestic relations order (QDRO). Id. The bankruptcy court determined that the trial court's order was not adequately clear regarding the second mortgage and ordered the wife to petition the trial court for clarification. Id. at 478-79.

After a hearing, the trial court issued a written order stating, in part, that it had been the intent of the court that the wife have a judgment against the husband for $21,652, which was half the balance of the second mortgage, that the husband was to pay the wife monthly installments of $252.47, which was half of the mortgage payment, and that the wife was to have a lien against the present value of the husband's benefit plan as security. Id. at 480.

On appeal, the husband argued the trial court impermissibly modified rather than clarified its earlier order. A panel of this Court disagreed, stating "the trial court in the present case did not modify the property division, but rather provided alternate means of securing Gary's existing obligation after learning that the original QDRO would not be enforced." Id. at 482.

Here, in the trial court's order dividing the marital estate, it stated that "neither party has rebutted the presumption of an equal division of the marital estate."

Appellant's App. p. 15.  Thus, it was clearly the trial court's intent to effect a fifty-fifty distribution.

However, just like the trial court's intent was frustrated by the husband filing Chapter 13 bankruptcy in Shepherd, in this case, the trial court's intent was frustrated by Sandra's insistence that the motorcycle be included in the marital estate when the record indicates that she signed the title over to David in March 2011.  Tr. p. 91, Appellant's App. p. 26.  It was not until the March 15, 2013 contempt hearing that Sandra finally conceded that the "motorcycle was not a marital asset subject to division."  Appellant's App. p. 68.

Accordingly, the trial court was stuck between a proverbial rock and a hard place.  Recognizing the difficult position in which it had been placed, the trial court stated that the situation was "doubly frustrating" because, not only had it been argued at the final hearing that the motorcycle should be included in the final property division, but that the same argument had been made in Sandra's response to James's motion to correct error.  Tr. p. 161-62.  Again, we think these facts make this case analogous to Shepherd where a complication required the trial court to provide an alternate means of effecting its original intent that the husband be responsible for one-half of the second mortgage.  954 N.E.2d at 482.  Here, by removing the motorcycle, adding an account receivable, and then effecting a fifty-fifty distribution, the trial court provided an alternative means of effecting its original intent of a fifty-fifty distribution.  Consequently, although we certainly do not condone Sandra's actions during these proceedings, we conclude that the trial court

merely clarified its original order to effect its intent. Thus, the trial court did not err under these circumstances.

### III. Attorney Fees

James requests that we remand for the limited issue of determining attorney fees for which Sandra should be liable. Indiana Code section 31-15-10-1 indicates that attorney fees may be awarded "for proceedings occurring after the entry of final judgment includ[ing] proceedings on appeal." Thompson v. Thompson, 811 N.E.2d 888, 929 (Ind. Ct. App. 2004).

While we sympathize with James and the position in which he has been placed, he nevertheless has not prevailed in this appeal. And although James points out that Sandra's misconduct led to this appeal, the trial court was also aware of her actions and had the discretion to order her to pay James's attorney fees. Ind. Code § 31-15-10-1. Consequently, we decline James's request that we remand this case to the trial court for the determination of whether Sandra should be liable for attorney fees. It seems that the most sensible thing for everyone involved is to lay the matter to rest and put it behind them so that they may continue on with their lives.

The judgment of the trial court is affirmed.

NAJAM, J., and CRONE, J., concur.