## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 01 2017, 8:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Joseph A. Christoff
Christoff & Christoff
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Michael T. Yates
More Miller & Yates
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Joseph Lee Smith,

*Appellant-Petitioner,*

v.

Margie Lee Smith,

*Appellee-Respondent.*

September 1, 2017

Court of Appeals Case No.
02A03-1612-DR-2724

Appeal from the Allen Superior Court.
The Honorable Charles F. Pratt, Judge.
The Honorable Sherry A. Hartzler, Magistrate.
Trial Court Cause No.
02D07-0211-DR-770

## Friedlander, Senior Judge

[1] Joseph Lee Smith appeals the trial court's award of damages to him, claiming the award is insufficient and should not be payable in installments. He further appeals the trial court's refusal to hold his ex-wife Margie Lee Smith in contempt of court. We affirm in part, reverse in part, and remand with instructions.

[2] Joseph and Margie married in 1991 and separated in 2002. They did not have any children together. On November 15, 2002, Joseph filed a verified petition for dissolution of marriage. The parties engaged in settlement negotiations and filed a written settlement agreement. The trial court approved the agreement on January 14, 2005, and incorporated it into a decree dissolving the parties' marriage. Among other provisions, the agreement required Margie to pay Joseph twenty-five percent of her "gross monthly" pension payments from the State of Indiana's Public Employees Retirement Fund (PERF) and to disclose to Joseph on an annual basis the amount PERF paid her per month. Appellant's Appendix Vol. II, p. 23.

[3] On February 27, 2015, Joseph filed a Verified Information for Contempt, Alternatively Breach of Contract. He amended the Verified Information on June 5, 2015. Joseph claimed Margie had missed several monthly payments. He further claimed Margie received additional pension funds as enhancements to her monthly check or as standalone extra payments at the end of the year but was not giving him his twenty-five percent share of those additional funds. Finally, Joseph argued Margie had failed to disclose to him on an annual basis the amount that PERF paid her per month. Margie did not dispute that she had failed to make several monthly payments to Joseph but claimed he was not entitled to a share of her additional payments.

[4] The trial court held an evidentiary hearing. On June 20, 2016, the court issued an order determining Margie had failed to comply with the agreed judgment by missing several payments and by paying Joseph from her net pension income

rather than her gross monthly payments. The court declined to find she was in contempt of court. The court further determined Margie was not required to pay Joseph a share of her additional funds from PERF. Finally, the court ordered Margie to pay Joseph $3,287.85 in damages at the rate of twenty-five dollars per month, plus $4,512.50 in attorney's fees at the rate of fifty dollars per month.

[5] Next, Joseph filed a motion to correct error. The court corrected a scrivener's error in the judgment but otherwise denied the motion. This appeal followed.

[6] Joseph raises four issues, which we restate as: (1) whether the trial court erred in determining Joseph was not entitled to a share of Margie's additional pension payments; (2) whether the trial court erred in ordering Margie to pay damages and attorney's fees in installments; (3) whether the trial court abused its discretion in concluding that Margie was not in contempt of court; and (4) whether Joseph is entitled to appellate attorney's fees per the settlement agreement.

## 1. Additional Pension Payments

[7] Joseph argues Margie is obligated under their settlement agreement to give him a portion of her additional pension payments. Margie responds that she is required to give him a share of her regular monthly pension payments and nothing more.

[8] When dissolving a marriage, the parties are free to craft an agreement providing for the disposition of property. *Bailey v. Mann*, 895 N.E.2d 1215 (Ind. 2008).

Settlement agreements become binding contracts when incorporated into the dissolution decree. *Id.* A trial court may entertain requests to clarify and interpret a settlement agreement after it has been incorporated into a dissolution decree, pursuant to ordinary contract law principles. *Beaman v. Beaman*, 844 N.E.2d 525 (Ind. Ct. App. 2006). Interpretation of a settlement agreement, as with any other contract, presents a question of law and is reviewed de novo. *Bailey*, 895 N.E.2d 1215.

[9] The terms of a settlement agreement will be given their plain and ordinary meaning unless they are ambiguous. *Pherson v. Lund*, 997 N.E.2d 367 (Ind. Ct. App. 2013). Where the terms are clear and unambiguous, we will not construe the contract or look at extrinsic evidence. *Magee v. Garry-Magee*, 833 N.E.2d 1083 (Ind. Ct. App. 2005). The terms of a contract are ambiguous only when reasonably intelligent persons would honestly differ as to the meaning of those terms. *Bressler v. Bressler*, 601 N.E.2d 392 (Ind. Ct. App. 1992). If there is an ambiguity, parol evidence is considered to clarify the ambiguity. *Magee*, 833 N.E.2d 1083. The goal is to determine the intent of the parties when they made the agreement. *McDivitt v. McDivitt*, 42 N.E.3d 115 (Ind. Ct. App. 2015), *trans. denied*.

[10] The parties' settlement agreement provides: "The subject matter of this Agreement is the settlement of the respective rights of Husband and Wife to all property, both real and personal, now in their name and/or possession." Appellant's App. Vol. II, p. 20. The contract further states:

Wife shall pay to Husband on a monthly basis, an amount equal to twenty-five percent (25%) of her gross monthly payment from Wife's pension from the State of Indiana Public Employees Retirement Fund. Provided however, the first two such payments·from Wife to Husband shall be in an amount equal to fifty percent (50%) of Wife's net payment from said pension and thereafter said payments shall be in an amount equal to twenty-five percent (25%) of her gross monthly payment from said pension. Such payments shall commence October 15, 2004 and shall be paid by Wife to Husband on the 15th of each month thereafter until terminated as indicated herein. Such payments shall terminate upon the earliest occurrence of the following: 1. The expiration of 20 years of the date of the decree of dissolution in this cause; 2. The death of Wife; or 3. The death of Husband.

Wife shall provide to Husband written documentation of the amount of said monthly pension payment to Wife on an annual basis. Should Wife make any other subsequent withdrawals from such pension, she shall pay to Husband an amount equal to twenty-five percent (25%) of any such other gross withdrawal or any other available death benefit. Husband shall be entitled to receive, from Wife's estate, twenty-five percent (25%) of any such other gross withdrawal or any other available death benefit from said pension.

*Id.* at 23.

[11] As noted above, PERF issued to Margie her additional pension payments by two methods: (1) as funds added to her "gross monthly payment;" and (2) a standalone payment at the end of the year. Based on the plain language of the settlement agreement, any funds added to Margie's "gross monthly payment" should have been included in calculating the monthly twenty-five percent share Margie owed to Joseph. Margie is obligated to pay Joseph twenty-five percent of her gross monthly payment, regardless of amount, and the settlement

agreement does not exclude any additional funds that PERF may add to the monthly payments.

[12] As for the standalone additional annual payments, the settlement agreement does not mention them, focusing instead on Margie's gross monthly payments. The agreement purports to dispose of the parties' rights to all marital property, and the additional pension payments would appear to be marital property. *See* Ind. Code § 31-9-2-98 (1997) (marital property includes "a present right to withdraw pension or retirement benefits" and "the right to receive pension or retirement benefits . . . that are vested . . . but that are payable after the dissolution of marriage"). The agreement is ambiguous as to whether Joseph is entitled to a twenty-five percent share of the standalone payments. *See Shepherd v. Tackett*, 954 N.E.2d 477 (Ind. Ct. App. 2011) (divorce decree ambiguous as to husband's obligation to make mortgage payments for marital home).

[13] We may consider parol evidence to resolve the ambiguity. The parties did not present to the trial court any evidence as to their intent with respect to the standalone payments at the time they drafted the agreement.[1] At the time the agreement was drafted the parties anticipated monthly pension payments, but it is unclear whether they were aware Margie would receive additional payments. The trial court erred in concluding Joseph is not entitled to twenty-five percent

---

[1] Joseph claims that Margie drafted the agreement and argues that it should be interpreted against her. During oral argument on Joseph's motion to correct error, his counsel conceded "we were both involved involved [sic] in the drafting [and Margie's counsel] was just the primary drafter." September 12, 2016 Hearing Tr. p. 5. We decline to construe the agreement against Margie.

of the standalone pension payments because the record is inadequate to determine the parties' intent. We reverse and remand for the court to: (1) calculate Joseph's share of the additional amounts that PERF added to Margie's gross monthly payments and adjust the damages award accordingly; and (2) hear evidence as to the parties' intent at the time the agreement was drafted with respect to standalone additional payments from PERF and determine whether the payments are subject to the settlement agreement.

## 2. Installment Payments

[14] Joseph argues the trial court lacked the authority to allow Margie to pay damages and attorney's fees in installments. Margie responds that the court acted appropriately due to her limited economic circumstances. Resolving this issue requires application of the governing statute. We apply a de novo standard of review to questions of statutory interpretation. *G.S. v. M.S.*, 69 N.E.3d 500 (Ind. Ct. App. 2017).

[15] The trial court had the authority to impose installment payments in the original divorce decree. *See* Ind. Code § 31-15-7-4 (1997) (a court shall divide marital estate "in a just and reasonable manner," including ordering one spouse to pay an amount where necessary, "either in gross or installments"). Joseph argues that he presents a simple claim of breach of contract, and the court's installment plan prevents him from being made whole in a reasonable manner because it will take years for Margie to pay off the judgment and attorney's fees award in increments of twenty-five and fifty dollars. He further claims the court should

have simply entered a judgment for the total amounts Margie owed him and allowed him to pursue proceedings supplemental to collect.

[16] The statute that governs enforcement of dissolution decrees provides:

> Notwithstanding any other law, all orders and awards contained in a dissolution of marriage decree or legal separation decree may be enforced by:
>
> (1) contempt;
>
> (2) an income withholding order; or
>
> (3) any other remedies available for the enforcement of a court order;
>
> except as otherwise provided by this article.

Ind. Code § 31-15-7-10 (2006).

[17] The statute grants the trial court wide discretion to ensure meaningful compliance with a dissolution decree. For example, in *Cope v. Cope*, 846 N.E.2d 360 (Ind. Ct. App. 2006), the parties executed a decree that provided wife would receive a portion of husband's military pension, in installments, through a qualified domestic relations order (QDRO) or other method approved by the military. The military refused to recognize the QDRO, and husband refused to make payments on his own. Wife sought to enforce the settlement agreement, and the trial court garnished husband's wages. A panel of this court affirmed the trial court's decision, concluding the trial court acted appropriately because garnishment was the "only practical recourse." *Id.* at 363.

[18] In this case, the court concluded Margie breached the agreement, but she was seventy-four years old and "of meager means and resources." Appellant's App.

Vol. II, p. 12. The court did not err in attempting to balance the parties' interests by establishing a realistic payment plan.

[19] Joseph argues the court unfairly prevented him from seeking to enforce the judgment through proceedings supplemental. We disagree. Nothing in the court's order prevents Joseph from seeking to enforce the judgment if Margie misses an installment payment for damages or attorney's fees.

[20] Joseph further claims the installment plan is, in substance, an inappropriate modification of the terms of the agreement. "Orders concerning property disposition" in an action for dissolution of marriage "may not be revoked or modified, except in case of fraud." Ind. Code § 31-15-7-9.1 (1998). A court retains jurisdiction to interpret the terms of the decree and decide questions pertaining to its enforcement. *Shepherd*, 954 N.E.2d 477. Clarifying a settlement agreement, consistent with the parties' intent, is not the same as modifying the agreement. *Id.*

[21] We cannot agree that the court modified the settlement agreement by ordering payment of damages and attorney's fees on an installment basis. None of the terms of the agreement have changed. Margie still owes Joseph twenty-five percent of her monthly payments and must compensate him for missed payments. The court merely devised a plan that Margie can afford and is most likely to result in compliance with the settlement agreement. *See id.* at 482 (trial court did not modify decree but instead clarified terms under which husband was to make monthly payments to wife).

# 3. Contempt

Joseph claims the trial court should have held Margie in contempt because she disregarded the settlement agreement. Margie responds that the trial court acted appropriately because she did not willfully violate the agreement.

A person engages in "indirect contempt of court" when he or she "is guilty of any willful disobedience of any process, or any order lawfully issued." Ind. Code § 34-47-3-1 (1998). Whether a party is in contempt of court is a matter for the trial court's discretion, and its decision will be reversed only for an abuse of discretion. *In re Paternity of M.F.*, 956 N.E.2d 1157 (Ind. Ct. App. 2011). A court abuses its discretion when its decision is against the logic and effect of the facts and circumstances or is contrary to law. *Id.* We will neither reweigh the evidence nor judge the credibility of witnesses. *Piercey v. Piercey*, 727 N.E.2d 26 (Ind. Ct. App. 2000).

The trial court determined, and Margie does not dispute, that she violated the settlement agreement by missing several monthly payments to Joseph and by paying him from her net pension income rather than in gross pension income. The record demonstrates Margie failed to make ten payments because she experienced unexpected financial difficulties, including being unable to work for several weeks in 2014-15 due to illness. Although she receives pension payments and a paycheck, her income is limited. Further, Margie did not appear to understand the difference between gross and net income. Despite these factors, Margie had otherwise managed to make monthly payments to

Joseph for almost a decade. This evidence supports a conclusion that she did not willfully disobey the dissolution decree.

[25] Joseph points out that Margie also failed to give him an annual statement of the amount she received from PERF per month, in violation of the settlement agreement. Margie testified that Joseph never requested a statement until he filed his petition for contempt, ten years after the agreement was executed. Margie was solely responsible for fulfilling her obligations under the agreement, but the trial court could have reasonably determined that Margie's failure to provide an annual statement was not a willful, material violation if her noncompliance was unobjectionable for a decade. The trial court did not abuse its discretion. *See Topolski v. Topolski*, 742 N.E.2d 991 (Ind. Ct. App. 2001) (no abuse of discretion in failing to find husband in contempt of divorce decree; husband missed some child support payments but paid much of child's college expenses).

## 4. Appellate Attorney's Fees

[26] Joseph argues he is entitled to appellate attorney's fees per the terms of the settlement agreement.[2] The trial court awarded attorney's fees to Joseph due to Margie's breach of the settlement agreement.

---

[2] He does not present a claim for appellate attorney's fees under Indiana Appellate Rule 66(E).

Each party pays his or her own attorney's fees absent an agreement between the parties, statutory authority, or a rule to the contrary. *Fackler v. Powell*, 891 N.E.2d 1091 (Ind. Ct. App. 2008), *trans. denied*. A contractual clause that allows for the recovery of attorney's fees will be enforced according to its terms unless it violates public policy. *Steiner v. Bank One Indiana, N.A.*, 805 N.E.2d 421 (Ind. Ct. App. 2004).

The portion of the settlement agreement that governs attorney's fees provides as follows:

> G. <u>INDEMNIFICATION.</u>
>
> Each party agrees to indemnify and save and hold the other harmless from all damages, losses, expenses (including attorney's fees), costs and other fees incurred by reason of the other's violation or breach of any of the terms and conditions hereof.

Appellant's App. Vol. II, p. 25.

In *Fackler*, the parties to a dissolution of marriage case negotiated a settlement agreement. The agreement included an indemnification clause that is almost identical to the clause at issue here, replacing the word "other's" with "indemnitor's." 891 N.E.2d at 1098. Wife argued that Husband failed to pay her money she was owed under the settlement agreement. Husband prevailed in the trial court. On appeal, this Court determined the trial court erred and Husband had breached the agreement by failing to fully compensate Wife. The Court further determined that, pursuant to the indemnification clause, Husband owed Wife attorney's fees because of his breach, in an amount to be determined by the trial court.

[30] In the current case, we affirm the trial court's decision that Margie was not in contempt, but we also conclude Joseph is entitled to at least a portion of the additional pension payments Margie received. Margie breached the settlement agreement to a greater extent than the trial court determined, and Joseph is entitled to an award of appellate attorney's fees pursuant to the indemnification clause. The trial court shall calculate the amount of the attorney's fees on remand.

[31] For the reasons stated above, we affirm the judgment of the trial court in part, reverse in part, and remand for further proceedings not inconsistent with this opinion.

[32] Judgment affirmed in part, reversed in part, and remanded with instructions.

Riley, J., concurs in part and concurs in result in part with separate opinion.

Najam, J., concurs in part and dissents in part with separate opinion

| Joseph Lee Smith, | Court of Appeals Case No. |
|---|---|
| *Appellant-Petitioner,* | 02A03-1612-DR-2724 |
| v. | |
| Margie Lee Smith, | |
| *Appellee-Respondent.* | |

**Riley, Judge concurring in result on Issue I, and concurring in Issues II, III, and IV.**

[33] I concur in result on Issue I, and concur in Senior Judge Friedlander's lead opinion on Issues Two, Three, and Four. Unlike Judge Najam, I cannot conclude that the settlement agreement is unambiguous with respect to the standalone retirement payments Margie receives at the end of the year. While analyzing the issue differently, I concur with Senior Judge Friedlander that the Issue should be remanded to the trial court for further evidence.

[34] The explicit language of the settlement agreement, which was accepted by both parties, states clearly that Margie has to pay Joseph "twenty-five percent of her gross monthly" pension payments. (Appellant's App. Vol. II, p. 23). As the standalone payment is paid to Margie on a yearly basis, and not on a monthly basis, I would conclude that, under the terms of the settlement agreement, Joseph is not entitled to a twenty-five percent share thereof. Nevertheless, as this particular clause of the settlement agreement is subject to three different legal interpretations, the agreement, by definition, must be ambiguous. For that reason, I concur in result and agree to remand Issue I to the trial court to allow the parties to present further evidence on their intent with respect to the standalone payment at the time of drafting the agreement. I concur with the majority in all other respects.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Joseph Lee Smith<br>*Appellant-Petitioner,*<br><br>v.<br><br>Margie Lee Smith,<br>*Appellee-Respondent.* | Court of Appeals Case No.<br>02A03-1612-DR-2724 |

**Najam, Judge, concurring in part and dissenting in part.**

[35] I concur in Senior Judge Friedlander's lead opinion on Issues Three and Four but respectfully dissent on Issue One. On that issue, I would hold that the settlement agreement is unambiguous and that judgment should be entered for Husband. Thus, I would also instruct the trial court on remand to recalculate the installment payments discussed in Issue Two of the lead opinion.

[36] The settlement agreement states as follows:

> Wife shall pay to Husband *on a monthly basis*[] an amount equal to twenty-five percent (25%) of her *gross monthly payment* from Wife's pension from [PERF]. . . .
>
> Wife shall provide to Husband written documentation of the amount of said monthly pension payment to Wife on an annual basis. *Should Wife make any other subsequent withdrawals from such pension, she shall pay to Husband an amount equal to twenty-five percent (25%) of any such other gross withdrawal or any other available death benefit. Husband shall be entitled to receive, from Wife's estate, twenty-five percent (25%) of any such other gross withdrawal or any other available death benefit from said pension.*

Appellant's App. Vol. II at 23 (emphases added).

[37]    By its plain terms, the agreement provides both that Husband is entitled to twenty-five percent of gross monthly payments as well as to twenty-five percent of "any other subsequent withdrawals." It is immaterial whether distributions from Wife's PERF account are called "payments" or "withdrawals." The purpose of the agreement's provisions is clear: Husband is entitled to twenty-five percent of whatever gross sums Wife receives from her PERF account whether those sums are distributed as regular or irregular payments or withdrawals, without exception. This is further confirmed by the final sentence in the last paragraph above, which provides that Husband is entitled to receive from Wife's estate twenty-five percent of any such other gross withdrawal or any other available death benefit from Wife's PERF pension.

[38]    In this agreement, the terms "payments" and "withdrawals" are used interchangeably. This is apparent from the phrase, "any *other* subsequent withdrawals." (Emphasis added.) Here, "any" plainly means "all." And, here, "other . . . withdrawals" refers directly to "gross monthly payments," which is

the only possible antecedent. The text demonstrates that "gross monthly payments" are deemed withdrawals and that "other . . . withdrawals" are deemed payments. The agreement provides that Husband is entitled to twenty-five percent of "any such *other* gross withdrawal" (emphasis added); that is, in addition to the gross monthly payments, he is entitled to a share of any "other" gross withdrawal. This is the only interpretation that gives meaning to the word "other," which is used three times in the same paragraph.

[39] The words "other" and "such other" require an antecedent. Otherwise, those words are surplusage and meaningless. But we may not excise those words from the agreement. Our Supreme Court has been clear that, in reading contracts, our ultimate goal is to determine the intent of the parties at the time that they made the agreement. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012). "We begin with the plain language of the contract, reading it in context and, whenever possible, construing it so as to render each word, phrase, and term meaningful, unambiguous, and harmonious with the whole." *Id.* By using the word "other" to modify the word "withdrawal," there is no question that the parties considered payments to be withdrawals and that they contemplated and provided for the payment of twenty-five percent of "any" withdrawals "other" than monthly payments to be made to Husband.

[40] The agreement connects the words "payments" and "withdrawals" and uses them interchangeably. The phrases "any other subsequent withdrawals," "any other gross withdrawal," and "any such other gross withdrawal" are catch-all provisions that refer back to the only "other" withdrawals mentioned in the

agreement: the gross monthly payments. These catch-all provisions demonstrate the parties' intent that Husband is to receive twenty-five percent of "any" gross distributions from Wife's PERF account.

[41] Any distribution other than the monthly payments—including any standalone, additional annual payment—is an "other gross withdrawal" and, thus, falls squarely within the plain language of the agreement. And, significantly, the agreement does not say that husband is entitled only to twenty-five percent of the "gross *regular* monthly payment." The word "regular" does not appear in the agreement. *See B&R Oil Co. v. Stoler*, ___ N.E.3d ___, 2017 WL 22334035 (Ind. Ct. App. May 30, 2017) (we "must interpret the contract as written, not as it might have been written"), *trans. pending*.

[42] In sum, I would reverse the trial court's judgment for Wife on Issue One.[3] The plain meaning of the settlement agreement demonstrates the parties' intent to have Husband receive twenty-five percent of all gross distributions from the PERF account. Thus, I would also remand with instructions for the trial court to recalculate the installment payments due to Husband that are discussed in

---

[3] If the agreement were ambiguous, as the lead opinion concludes, then the proper disposition would be to affirm the trial court's judgment. Husband appeals from a negative judgment, which requires him to show that "the evidence leads to but one conclusion and the trial court reached an opposite conclusion." *Burnell v. State*, 56 N.E.3d 1146, 1150 (Ind. 2016). If the agreement were ambiguous, then Husband had the opportunity to present evidence to the trial court, and, having failed to meet his burden of proof, Husband would not be entitled to a remand.

Issue Two of the lead opinion. I concur in Senior Judge Friedlander's resolution of Issues Three and Four.

.